

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 10, 2025

**BY ECF AND EMAIL**
The Honorable Sarah Netburn
Chief United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, New York 10007

The Honorable Robert W. Lehrburger
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

The Honorable Henry J. Ricardo
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Brandi Felci*, S1 25 Cr. 484 (DLC)

Dear Chief Judge Netburn, Judge Lehrburger, and Judge Ricardo:

    Pursuant to the Court's November 4, 2025 oral order, the Government encloses declarations from the following law enforcement agents: (1) New York City Police Department ("NYPD") Detective and Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Anthony Assent; (2) NYPD Detective and TFO Jawuan Hubbard; and (3) NYPD Lieutenant and TFO Michael Pomerantz.

    Consistent with the Government's November 2, 2025 letter to the Court (Dkt. 72) and the Government's representations at the November 4, 2025 presentment of defendant Brandi Felci, the enclosed declarations, which are attached hereto as Exhibit A, confirm that law enforcement agents did not intentionally disregard the Court's October 30, 2025 order directing agents to take Ms. Felci back to the hospital (the "Hospital Order").[1] Law enforcement's failure to take Ms. Felci directly back to the hospital after court on Thursday, and the Government's mistaken understanding of the facts as relayed to the Court at the presentment the next day, were the result

---

[1] The transcript of the October 30, 2025 proceeding, which contains the Hospital Order, is attached hereto as Exhibit B.

of good-faith miscommunications among multiple agents involved in coordinating Ms. Felci's transport. As conveyed in the Government's November 2, 2025 letter, the Government regrets that the Hospital Order was insufficiently relayed to transporting agents and, as a result, not carried out, and that the Government's initial understanding of the facts, which it was seeking to gather in real time in response to questions raised shortly before and during court on Friday, October 31, was incorrect.

With respect to the failure to return Ms. Felci to the hospital on Thursday, October 30, the enclosed declarations, together with email and call records, reflect the following timeline. Following the Hospital Order, Detective Assent spoke to other law enforcement agents, including NYPD Detective Jawuan Hubbard, and conveyed to Detective Hubbard that Ms. Felci needed to go to the hospital. (Assent Decl. ¶ 6.) Detective Hubbard agreed to handle the request, and in turn arranged for other law enforcement agents to transport Ms. Felci to the hospital. (*Id.*; Hubbard Decl. ¶¶ 4–5.) Later that day, NYPD Lieutenant Michael Pomerantz, who was not aware of the Hospital Order, spoke to an NYPD Sergeant ("Sergeant-1") who was coordinating Ms. Felci's transport, and conveyed to Sergeant-1 that Ms. Felci had previously been to the hospital earlier in the day and cleared fit for confinement, and therefore did not need to go back to the hospital unless she was indicating such a need. (Pomerantz Decl. ¶ 5.) At approximately 6:30 p.m., after a different NYPD Sergeant ("Sergeant-2") texted Detective Assent to ask whether someone needed to take Ms. Felci to the hospital, Detective Assent responded, based on his prior instructions to Detective Hubbard, "Someone else took her." (Assent Decl. ¶ 8 & Ex. 1.) The following morning, Friday, October 31, Detective Assent picked up Ms. Felci from the MDC and took her back to the hospital—for what Detective Assent believed, at that time, was the third trip since her arrest—where she received methadone and was discharged. (*Id.* ¶ 9.)

With respect to the Government's representations to the Court on Friday, October 31, the enclosed declarations, together with email and call records, reflect the following timeline. The Government first learned of this issue at approximately 3:37 p.m. on Friday, when the prosecutors received an email from Judge Lehrburger's Chambers conveying a concern that law enforcement had disregarded the Hospital Order. The Government immediately contacted Detective Anthony Assent by phone about this issue.[2] Seeking to respond to the Court promptly in advance of Ms. Felci's presentment (which was expected to begin shortly), the Government responded to that email about ten minutes later, at approximately 3:48 p.m., conveying its understanding (which turned out to be incorrect) that Ms. Felci had been taken to the hospital on Thursday after court but denied methadone and released. At approximately 4:14 p.m., while in court moments before the start of Ms. Felci's presentment, Detective Assent then spoke briefly on the phone with Detective Jawuan Hubbard, and believed, based on that conversation—mistakenly, as he later learned—that Ms. Felci had indeed been brought to the hospital on Thursday after court. (*See* Assent Decl. ¶ 11.) Further conversations the following day, Saturday, November 1, between Detective Assent and Lieutenant Pomerantz, and between Detective Assent and Detective Hubbard, revealed that, due to a miscommunication, Ms. Felci had not been taken to the hospital

---

[2] The time of the call with Detective Assent, as it appears in Detective Assent's phone, is 3:36 p.m., which is one minute before the 3:37 p.m. email timestamp. (*See* Assent Decl. ¶ 10.) The Government is not aware of any other call between it and Detective Assent between 3:37 p.m. and the Government's 3:48 p.m. email to the Court and therefore believes that the apparent discrepancy between the timestamp on Detective Assent's phone, and the timestamp on the email from Judge Lehrburger's Chambers, is likely attributable to the different phone and email servers/networks.

after court on Thursday.  (Assent Decl. ¶ 15.)  Detective Assent promptly informed Government attorneys, who filed a corrective letter with the Court the next day, Sunday, November 2.

      As the enclosed declarations and the above timeline make clear, the Government and its agents consider the health and safety of the defendants in their custody, compliance with court orders, and candor to the Court to be of paramount importance.  The attached declarations show that while the agents involved in coordinating Ms. Felci's transport last Thursday inadvertently failed to appreciate the circumstances under which Ms. Felci was to be returned to the hospital, law enforcement agents at all times accounted for Ms. Felci's health, including by bringing Ms. Felci back to the hospital the next morning.[3]  Moreover, the declarations confirm that the failure to return Ms. Felci to the hospital resulted from a good-faith misunderstanding.  It is clear that, as early as Thursday evening, Detective Assent believed that Ms. Felci was returned to the hospital after court as ordered.  More specifically, approximately three hours after the Court's Hospital Order, after Sergeant-2 sought to confirm whether Ms. Felci still "needs to be taken to the hospital today," Detective Assent responded, "Someone else took her," referring to Detective Hubbard.  (Assent Decl. ¶ 8 & Ex. 1.)  In other words, approximately 21 hours before the Court inquired about the hospital visit on Friday afternoon, Detective Assent was confirming for fellow officers his mistaken belief that his instructions to Detective Hubbard had been carried out.

      The same mistaken belief resulted in the Government's representations the next morning.  In attempting to respond in real time to the Court's concern that law enforcement had ignored a court order, contrary to the Government's and agent's belief up until that point, the Government and Detective Assent sought to gather facts and relay them to the Court as quickly as possible.  This was done in haste, and the Government sincerely apologizes to the Court that the information conveyed was not accurate.  Moreover, as set forth in his declaration, Detective Assent acknowledges and regrets not being more clear that he was making inferences about what had happened when he conveyed his honest belief to the AUSA.  The AUSA understood Detective Assent to be conveying facts when he was in part conveying inferences, and that gap in communication led to inaccuracies, which the Government sincerely regrets.  Detective Assent learned the next day that his belief about what happened was wrong and he immediately advised the Government so that the Government could correct the record.

      Recognizing that Detective Assent acted in good faith, but also appreciating the importance of this matter, the Government has discussed this situation with Detective Assent at length, as well as with his DEA supervisor and others.  The Government has also closely considered what happened here internally, including with supervisors and the Chief of the Criminal Division, who has separately spoken as well with the relevant DEA supervisor.  Everyone involved understands that the Court relies upon effective communication between the Government and law enforcement partners in collecting information, and also that when addressing the Court, accuracy is paramount,

---

[3] Based on records obtained from MDC, after Ms. Felci was brought to the hospital by agents on Thursday and Friday following her arrest and cleared fit for confinement, she was seen five times between Thursday, October 30 and Tuesday, November 4, by MDC medical staff, who prescribed her medication and noted that she did not appear to be in medical distress.  The Government also personally communicated with MDC legal staff to ensure that Ms. Felci was evaluated after displaying certain symptoms at the courthouse on Monday, November 3, and again communicated with MDC legal staff after Ms. Felci reported feeling ill in court the next day.

even if ensuring accuracy might require additional time or diligence, or acknowledging the limits of one's own personal knowledge. All involved have learned from this experience.

    The Government is available to answer any additional questions upon the Court's request.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    /s/
Remy Grosbard
Adam Z. Margulies
Lauren E. Phillips
Assistant United States Attorneys
Southern District of New York

cc:    Counsel of Record (by ECF and email)